Please the court, I'm Bradley O'Connell representing Petitioner Wayne Arnold. Resolution of this case simply requires application of a handful of very elementary principles, each one of which represents a well-established principle of federal law for purposes of the jurors are presumed to follow the instructions, the judge's instructions prevail over the attorney's arguments, and I think most importantly for this case, the specific prevails over the general. And explicit instruction prevails over some message supposedly implicit in some other instruction. Now, this specific over general rule is not some arcane lawyerly concept with a Latinate name. It's the way ordinary people review written materials, whether we're talking about a statute, an apartment lease, the manual for a VCR, or a recipe for chocolate cake. It's the way people understand things. Well, you're in deep trouble if we've got to rely on my ability to read VCR manuals. But apart from that, walk me through in very simple English why the instructions are even incorrect, because they say that you have to, for there to be a robbery, there must be a taking that is accomplished by force or fear, and that the intent to steal must be formed before the taking. Now, to my mind, that's exactly what you think the instructions should have said. No, Your Honor, because the instructions did not state that the intent, what everyone agrees to be the California rule, which is that the intent must exist at the time of the use of force. And by instance ---- But I just gave you the syllogism. And to my mind, it is one and the same, because they have defined what robbery is, and that has to be a taking by fear or force, and the intent must be formed before the taking. That is, before the force. Well, Your Honor, I think ---- It just seems real simple to me. I think ---- Your Honor, I think the problem with that is that in the situations to which California's after-formed intent rule is directed are situations in which the force and the taking are not contemporaneous. Such as, as described in the leading California case which derived this ---- Hey, no quarrel about the general proposition. I still want you to walk me through in a way that somebody who can't understand VCR manuals will understand why the syllogism isn't exactly consistent with the law of California, that your intent has to be formed before the force and before the taking. In a situation where there has been an assault, there's been a fight for whatever reason, and with the victim incapacitated, at that point, the defendant gets the bright idea to steal something and then takes it. That is a situation which in many other jurisdictions, many other jurisdictions would look at that and say that is a taking accomplished by force because it was the prior assault which had the effect of facilitating it. So I'm with you. I'm not quarreling that in California an opportunistic taking, that is, I just clobbered the guy, now it's my shot at getting his wallet, okay, doesn't cut it. Okay. I was ---- Let's just assume we're on the same page here. It doesn't cut it. My question is why, when you have told the jury that there has to be a taking that is accomplished by force and that the intent must be formed before the taking, that is, before the force, that isn't exactly what you're arguing for. Well, Your Honor, I think where I would disagree with your formulation is when you said at the time of the taking, that is, at the time of the force. Well, but that's what the instruction is when you read both of them, when you read them all together. I disagree with that, Your Honor. Why? Because we start with the sequence of instructions we're talking about are the ones numbered 9.40, 9.40.2, and C.1. 9.40 has five paragraphs. The fourth of those, which is the ---- I think the paragraph to which Your Honor is referring is the one that says the taking is accomplished or effected by force. Yes. The mens rea paragraph is a separate one. That is the one that says that the taking must be, with a specific intent, permanently deprived. Now, if 9.40 were the only instruction we have, this would be a somewhat different case. All right. Well, that's where we're going. I just want you to get me up to there. So then what I said was then the weight of your argument has to depend upon the handcrafted addition. Oh, and also in 9.40.2, which goes in between the handcrafted addition. 9.40.2 is the following instruction which says that to constitute the crime of robbery, the specific intent must arise before or at the time of the act of taking. And if it arises after the act of taking, then it's not robbery. And that's followed by ---- That statement alone, I agree. If you just take that out of context, that is an erroneous statement of the law. But the problem here is that we have the preceding instructions and then the instructions that follow afterwards. And if you read them all together, it becomes clear that the intent can't be after informed, after formed. I think the only thing that becomes clear, Your Honor, is that the intent can't be formed after the taking. Because given that the initial instruction, 9.40 ---- But that doesn't make any sense. I mean, that wouldn't make ---- that's not logical to instruct that you're going to take something and then you're going to form the intent to take it. That doesn't make sense. Well, excuse me, that the intent, that the only thing that's clear in the instructions is that in a, what I agree is a rather ridiculous scenario in which someone takes something for some reason and then, only then decides to permanently deprive the owner, that that, it's clear that that is not a robbery. But what is not clear is, given that the most specific instruction on intent, and on specifically on the timing of intent, focuses it right on the act of taking. When you have a scenario, such as we have here, where you have a force, you have the act of force, you have an interval, then you have the taking. Under these instructions, erroneously, the jurors would believe that if the intent arose in that interval between the act of force and the taking, it would constitute robbery, because the intent had arisen at the time of the act of taking. That is where Ballendock versus U.S., Condi versus Henry, Gibson versus Ortiz, all the cases stating the rule that a specific instruction prevails over a general. Because remember, there is no explicit instruction anywhere that says the intent must exist at the time of the force. Even 9.40, which granted is not the primary focus of our challenge, but even 9.40 only deals with intent in the context of the act of taking. When you combine that general instruction, which is silent on any requirement that the intent existed to use the force, you add to that a very specific instruction, which says the act of taking is our crucial demarcation as far as the time goes. Mr. Kennedy, let me ask. I have right here the record where you've been referring to it, and you said earlier that the one that has the five points, if that was correctly stated as far as it went. And then we were up to 9.40.2, which is the one that begins to constitute the crime of robbery. And I am not clear from what you're saying now, and I am confused. Are you saying that this paragraph is correct as far as it goes or incorrect as far as it goes? I'm saying it is incorrect as far as it goes, Your Honor. And what is the specific – is it the word taking as opposed to force? Yes, Your Honor. Or a point to it. A correct – excuse me, Your Honor. Where does it – I have it right here. Just show me what it should have said in your view. In my view, a correct instruction would have had the same – could have had the same structure and would have read, going to the fourth line of 9.40.2 in the written instructions at ER 30, must have formed a specific intent to permanently deprive etc. at the time that the act of force occurred. And if this intent was not taken until after the act of force, then the crime of robbery has not occurred. It can't be taking without force and fear, of force or fear, under the instructions. Yes, it could, Your Honor, because given the fact that this same formulation, the same formulation in which the State hangs its argument and the same paragraph, I think, of 9.40 that Your Honor is referring to, that the taking was accomplished by force or fear. The suggestion that a requirement of intent at the time of force flows inexorably from that paragraph, I think is defeated by the fact that most other jurisdictions take this same concept, take this same concept of taking accomplished by force and say it's all right and is within the meaning of that formulation, even if the intent doesn't arise until after the force because the taking has been accomplished by force. Let's suppose that you're right and that the instruction at least is ambiguous. Let's suppose that it's at least ambiguous. If the instruction is at least ambiguous, then the question is, did under Nader and under Boyd, was the jury, was it possible that the jury misapplied? That's not exactly technically legal, but that's the bottom line. In that inquiry, we do look to see what the arguments were. In here, the arguments, the theory of defense, the theory of the prosecution, the evidence, all focused on whether Arnold had the requisite intent before he got to the store or didn't. So even if there is ambiguity in the instruction, then how would it be contrary to clearly established Federal law under Boyd? Well, Your Honor, preliminarily, I just state my position. My position is the instructions are not ambiguous. They're actually wrong. I know that, but I'm saying if they were just – if they were ambiguous. I think it comes down to which this case more clearly resembles. Is this more like Middleton v. McNeil, or is it more like such cases as Hoe v. Carey where this Court has found instructions inadequate – excuse me, arguments inadequate to cure instructions? It doesn't matter what this Court has found. What matters is what the U.S. Supreme Court has said, because this is an EDPA case. Yes, Your Honor. In McNeil, the Court explicitly and correctly instructed at least three times that imperfect self-defense required depended on an unreasonable belief. Then there was one errant instruction in the midst of those in which the Court used a reasonable person standard. Supreme Court said this was a case of, at worst, internal inconsistency in the instructions. That was why it was permissible for the Court to consider the attorney's arguments in the mix. But what is missing here is anything analogous to the three times or more in the McNeil trial that the judge correctly gave the unreasonable belief standard. Look, here there just was no fight about what happened inside the store. I mean, the government's theory was that Arnold came back to the store with the intent that was required, that you would require. Your theory was that he formed his intent when he went back out and got heckled about not having the register. That's all. Those are the bookends. Yes, Your Honor. I agree with that. Okay. That being so, and the jury convicted, the jury found special circumstance to be true. Why should anybody be left in any doubt that the jury found the requisite intent at the required time? Well, Your Honor, first of all, as reflected in Suniga v. Bunnell, the jury wasn't bound by the prosecutor's theory of the facts. The jury could convict on any theory allowed by the evidence and the instructions. We know that this jury had trouble with this case. They deliberated for three and a half days. They had multiple read-back requests, including significantly for Vernell Crear, who was the neighbor across the street who made the observation of the people saying, hey, aren't you going to take something? And they asked at least one question relating to intent and robbery, felony, murder, indicating that they might not have viewed these instructions as being so crystal clear. And possibly most importantly of all for another case which Your Honor mentioned, Nieder v. U.S., the very fact that we have a conflict in the evidence on the element on which there's a misinstruction, that should, under Nieder, preclude a finding of harmless error. But we have something else here as well. We have the other error. We have a, what is a conceitedly erroneous refusal of instructions on the defense's lesser offense theory. So this becomes Condi v. Henry all over again. Look, you know, Condi is super, but it's our law, not the U.S. Supreme Court. The U.S. Supreme Court's law is Beck, and Beck applies in capital proceedings, and it's never held that there's a constitutional right to a lesser included offense in a non-capital proceeding. So how can the California court of appeals decision be contrary to clearly established Federal law by the United States Supreme Court? Because this Court in an Aetba case, Bradley v. Duncan. I don't care. Okay? I mean, not to be put too fine a point on it, but I don't care what our Court has done, because Aetba focuses on what the U.S. Supreme Court has said. Right? And this, and the U.S. Supreme, and under, this Court has interpreted the U.S. Supreme Court as saying, as having a well-established right to instructions on the defense theory of the case. And here it just happens the defense theory of the case took the form of a theory that due to a failure due to the insufficiency of the facts to meet one of the elements of robbery, that, therefore, it corresponded to the lesser offense. And we're combining this also, as in Condie, with a misinstruction on the very element which distinguishes the greater and the lesser. I'm sure you want to save a little time. Thank you, Your Honor. May I ask one question? Was an objection made to the trial judge, whom you're now criticizing, on his instructions for the word force not being in there and the word taking? Was that objection? I couldn't find that objection. That was not objected to. However, there has not been any argument of waiver or procedural default, because in California, the instructions actually given are always revealable if they affect substantial rights. Now, there was a defense request for the lesser-included instruction on theft. I understand that, but the point you were making earlier when we walked through it, you said the word should have been force not taking. Yes, that would have been correct. Imagine how a trial judge would feel if the Ninth Circuit or any other court said you made a mistake on something that was never brought to that poor judge's attention. I understand. Such as plain error. I don't think plain error being a concept of review within the federal judicial system. I think the relevant question here is, was this barred on state review? And there has been no claim here that there was a waiver or procedural default, because the California rule is that the instructions actually given are reviewable, with or without objection, if they affect substantial rights. And under that rule, the California courts routinely consider any alleged defect in the instructions defining the elements, because they view those as affecting substantial rights. So given that there has not, there was not a waiver claim asserted, and that the State's answer to the habeas petition did not allege any procedural default objection, I don't believe that that poses any impediment to this Court's review. Thank you. Thank you, Your Honor. Thank you, Mr. O'Connell. Mr. Engler. May it please the Court. Let me start a little bit out of order by confessing a misstatement in our brief. It didn't come up in counsel's argument, but I want to make clear that our statement at page 41, that petitioner did not request the lesser-included defense instruction. That was incorrect. It was sloppy on my part, made in the rush. I misread a footnote in the direct appeal opinion. I apologize for it. There's really no explanation for it. It wasn't an issue in the State court, because as counsel correctly states, there need be no requests. The issue of a request or not is irrelevant to whether they're correct instructions under State court review. Having said that, let me briefly address some of the points made in petitioner's argument. The fundamental elements of the crime of robbery on which there is no disagreement under California law is that there has to be taking of property from the person of another. I would characterize that as element one. That the taking has to be accomplished by force or fear, and that the taking has to be accompanied by an intent to steal. That is an intent to permanently deprive. California's after-intent rule makes clear that the intent to steal has to arise before the other elements, that is before contemporaneous with the elements of the taking and the elements of the force. There's no after-formed intent theory of robbery in California. Those are the elements. There's no dispute on that. Here's what the jury was told, and this is at ER 29 and 30, I believe. They were told that a robbery in California requires a taking. They were told that the taking has to be accomplished by force or fear. And then they were told, both in the 9.40 and the immediately succeeding 9.40.2 instruction, that the taking has to be accompanied or preceded by an intent to steal. The intent to steal was, therefore, necessarily tied in with the taking and with the use of force. It's our position that those instructions were correct as a matter of state law, which is what the State Court of Appeal found. What Appellant argues is that the instructions had to say that there was a taking, that the taking was accomplished by force, and that the intent to steal preceded the force or arose at least contemporaneous with the force. So Appellant or Petitioner is essentially arguing that, that instead of using the word taking, the Court should have used force when it said that the intent to steal had to arise before the act of the taking. In our view, that would have made no difference. Do you then agree that that's a misstatement? Just looking at it in an isolated way, that that specific sentence you just quoted from is a misstatement of California law? I don't agree with that. In an isolated way? If 9.40.2 were the only instruction given on robbery, the State would have problems. You need 9.40. I would agree with that. You're taking a correct 9.40.2 and a correct 9.40. Well, I guess I'm quibbling. You are. Why don't you just admit that if you take that out of context, it's not a correct statement of California law? I decline to admit it for two reasons. One is the State Court of Appeal did not believe that it was a misstatement. Did the State Court of Appeal look at the instructions as a whole? Correct. And you can't pull one out. Counsel, I'm just asking you. It's kind of interesting to me that you can't. If you take it out of context, it's an error, isn't it? Conceded. Okay. Good for you. Conceded. Okay. I don't think it's possible to take this out of context, though. And I also disagree that we are in a, you know, one instruction is the general instruction that the jury wouldn't have known what to do with, and 9.40.2 is somehow a specific instruction that causes them to jettison the general instruction. These instructions read of a piece. They're right behind each other. But we wouldn't have even had this whole ground for habeas if the court had put force there instead of taking. Correct. Yeah. Correct. We would not be here. Is that the way the pattern instruction, when it's printed up in the form, reads? It says force not taking? In other words, was this – it says 9.402. That's from a pattern instruction, I assume, like Bagi. Yeah. So how did it – was it in the original? It said force instead of taking. No. It says taking. There's been a new set of instructions that have adopted since this case that – a new set of pattern instructions by the State Judicial Council. CALJIC was actually a semi-private set of pattern instructions that uses both taking and force. And those instructions are quoted in Appellant Supreme. So I'm clear. This, as given, was exactly the way it appeared in the form instruction. That's correct. The trial judge did not modify the form instruction. But the one that comes after that about while he was still alive, that was a special instruction. That's correct. That was not a pattern instruction. The reason why I believe that that pattern instruction, it was worded the way it was when it was in use. And, frankly, there's no rule that precludes a State trial judge now from using the CALJIC instructions. This instruction has never been held to be wrong by any court as a matter of State law. It's because, conceptually, the jury starts out with the notion that they've got a taking. And then they're told what has to be added to that taking to make it a robbery. So the taking has to be by force or fear. The taking has to be with an intent to steal. The taking has to have an intent to steal that arose before the taking. And, conceptually, that's a logical understanding if you think that most people think that when something is taken from them, I was robbed. How many times do you hear somebody say their home has been the victim of a burglary when nobody's been present? They say, I was robbed. Because it's the notion of the taking that is the fundamental act that sticks out in most people's mind. So, conceptually, it's not that the instruction drafters just got it wrong as a matter of State law. I believe they correctly went through the notion of what is a robbery, and they focused in on that taking. And they put all the elements there. And they're all there. They're read of a piece. They're read as a whole. We fundamentally disagree with Petitioner's argument that there was a misdirection, a misstatement, an omission of any element of State law. We believe it was all there. For that reason, you know, we don't concede that there was even an ambiguity in the instruction. But if this Court were to conclude that somehow this jury was left at sea or possibly didn't understand whether after formed intent could negate the intent to commit a robbery in this case or negate the crime of robbery, if the Court were to conclude that there was ambiguity, that brings this case squarely within Middleton v. McNeil, Estelle v. McGuire, any number of U.S. Supreme Court cases that have talked about what happens when the instructions given have a potential to be misinterpreted by the trier of fact. Not when there is an omission, but when there's a potential for interpretation. That's why we're talking about Middleton. And we're not talking about Nieder, for example, which is an omission case. In that case, then one looks to the entire record. And certainly, as Middleton explains, the arguments of counsel are an important part of the entire record, particularly, and this is basically a quote from McNeil, particularly when the prosecutor adopts the position that is favorable to the defendant. And that's exactly what happened in this case. And I quote at some length in my brief the at least a dozen instances when the prosecutor argued to the jury that her theory of the case was that the defendant intended to rob the store from the moment he went in there, before he went in there. He went there to commit a robbery. And then she twice says that if she once says if you agree to the afterthought theory, that's not felony murder. And again, she says if you believe the defendant, that's not felony murder. Defense counsel reiterates this same idea in his argument. In our view, there is simply no reasonable likelihood that any jury, having heard the instructions, heard the evidence, heard the argument of counsel, would then have gone back into the jury room and said, we're going to throw that all out, and let's parse these instructions in our own way that nobody's ever urged us to parse them, and we'll reach this conclusion. Counsel raised a point. I guess I can see what your answer to it might be, but he said, well, no, the jury was confused because they had readbacks that took three and a half days. What's your answer to that? Our answer to that would be that this was a double homicide trial with special circumstances. The trial itself took, I believe, 10 days, as the State Court of Appeal indicated, and that it's reading tea leaves to say that a given length of deliberations shows it's a close case or doesn't show it's a close case. Well, even if it was close, you're saying that the instructions were clear. Correct. There was no instruction. They might have been undecided about the weight of the evidence, but they were not unclear as to the purport of the instructions. That's correct. In fact, the one thing, in addition to the length of the deliberations, Petitioner has also talked about, they asked for a question about intent that he argues that they were focusing on after form intent. I believe that's at page 49 of the executive record as the State Court of Appeal's recitation of what happened. And the question that they ask is, does the intent to commit robbery make it murder one for both? Now, it's speculative to say what they meant by that, but it seems to me that the most reasonable interpretation, even of that question, is they understand the intent directed to the primary clerk or the younger clerk for whom the defendant had said that if I had a gun, I'd go in there and rob him and take the cash register. And so the fact that they're focused in on that doesn't indicate that they have gone off on some frolic and detour on after form intent. And again, it seems to me the most reasonable interpretation, even of that question, is they understand we have to find an intent to rob here. And the question they ask, and again, I'm reading from the State Court of Appeal opinion, was does the intent to commit robbery make it murder one for both? And murder one being the felony murder theory. That was the only theory of first-degree murder that the jury received. Let me just conclude very briefly on the second contention of error, which is the lesser included offense instruction. We did make an argument that that instruction was in error. The State Court of Appeal characterized our argument as strained and rejected our argument. And so in this court, we're accepting that ruling of the State Court of Appeal, that there was error in failing to give the lesser included offense instruction. So the question then becomes, is that constitutional error or is that state law error? Beck v. Alabama says that a failure to give a lesser included offense is not constitutional error except in a capital case. Wyndham v. Merkle, a decision of this court, recognizes that. Petitioner relies, in our view, primarily on Condie v. Henry. He cites a number of other cases, Ho, Bradley as well. Condie is the only one of those cases that involves a lesser included offense. Ho involved an erroneous instruction on general intent as opposed to specific intent. Bradley involved a failure to instruct on the defense of entrapment. So Condie v. Henry is the case that involves the lesser included offense. What's significant in our view and why that case is distinguishable is because Condie v. Henry also involved evidentiary preclusion by the trial court. The court prohibited the defense from putting on the theory that would have supported the evidentiary, a lesser included offense of simple kidnapping was the issue there. There was misinstruction on an element not, which we are not conceding here. We are arguing there was no misinstruction. And there was preclusion of defense argument in favor of the lesser theory. We maintain that Condie has to be interpreted in its entirety for what it was. It cannot stand for the rule that failure to give a lesser included offense amounts to constitutional error because that would contravene the United States Supreme Court authority. We simply don't have the array of issues that was present in Condie in this case. We do not concede instructional error. We believe it was correct. If the court concludes that there was an ambiguity, it's our position that there was no reasonable likelihood that this jury misunderstood what they were supposed to find or had to find to convict. And finally, that the lesser included offense issue is an issue of state law and not one of federal constitutional dimension. I do have a couple of questions, and these are background questions. The felony murder rule was used here, and I can see why the prosecutor might want to use it, but was there something about California law that required that it be used? Why couldn't murder be charged without resorting to the felony? In other words, just ignore the robbery part and try to prove murder without regard to the robbery. Was there something? I'm trying to understand the interplay of why the prosecutor charged it that way. Well, I'd be speculating because I'm not privy to the trial prosecutor's thought processes or the charging prosecutor's thought processes. Having said that, for first-degree murder, one has to show an intent to kill. And on this record, I think that the felony murder theory was a much quicker, more direct route to a potential first-degree murder conviction than an intent to kill. There was some evidence from the preexisting statements of the defendant or the pre-incident statements of the defendant that might have supported that. But clearly you had a, from the prosecutor's point of view, a clear evidence of a liquor store robbery here, and that's your classic felony murder under California law. That's the only question I have. Thank you. We'll submit it. Are you single, Mr. O'Connell? Thank you, Your Honor. I realize I have very little time. You actually don't have any, so just go kind of quickly. Very quickly, Your Honor. Connie v. Henry did involve three errors, misinstruction on the distinguishing element, denial of instructions on the defense and three distinct errors, each a constitutional violation in its own right. We don't have three errors here. We have two. We have the combination of the misinstruction and the denial of the lesser. And I'm repeating myself, but we had a Ninth Circuit case that you're talking about that predated AEDPA and isn't in the universe that we look at for this purpose. The U.S. Supreme Court recognizes the right to instructions on the defense theory of the case, as in such cases as Matthews. Now, I do not contend that there is some generalized right comparable to Beck to lesser offense instructions in noncapital cases. But when you have a defective instruction on the distinguishing element and you have a denial of the corresponding lesser offense, I think defense trial counsel put it well. There must be a means, Your Honor, by which the jurors can vote for the defense theory. These instructions didn't give them that means, and that is why I submit that there would have been a misinstruction. Okay. Thank you very much. Thank you, Your Honor. Thank you, counsel, for your argument. The matter just argued will be submitted and we'll stand in recess for the day.
judges: Rymer, Wardlaw, Alsup